491 A.2d 1386

**Maurice BELL and Helen Schweiker, Appellants,**

**v.**

**CITY OF PHILADELPHIA and Police Commissioner Joseph O'Neill and Officer James W. Gamble, Appellees.**

Superior Court of Pennsylvania.

Argued May 10, 1984.

Filed April 19, 1985.

See also 511 F.Supp. 1156.

Irwin L. Gross, Philadelphia, for appellants.
Gabriel L. Bevilacqua, Philadelphia, for appellees.

Before WICKERSHAM, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

The principal issue in this appeal following a defense verdict in an action to recover damages for injuries caused by a shooting is whether it was error for the trial court to allow evidence of plaintiff's bad reputation for violence to show that he was probably the aggressor. Other issues raised in this appeal do not warrant lengthy discussion and will be disposed of summarily.

James W. Gamble, a police officer employed by the City of Philadelphia, completed his shift at the Juvenile Aid Division (JAD) about 3:30 a.m. and was standing on the corner at Castor and Frankford Avenues while waiting for his mother to pick him up and give him a ride home. Maurice Bell, who lived nearby, approached on foot after having spent several hours drinking at a neighborhood bar. He shouted a racial slur and told Gamble to get off his property. Gamble, in fact, was not standing on Bell's property. Bell entered his residence and Gamble returned to the place of his employment to call his mother and find out why she hadn't arrived. Learning that she was on her way, Gamble returned to the street corner to continue his wait. Bell emerged from his house, and an angry exchange between the men took place. Thereafter, Bell returned to his home, only to reemerge. This time he picked up a shovel and approached Gamble. The succeeding events are in dispute. Bell testified that Gamble swung at him with his nightstick, which he, Bell, parried with the shovel. Gamble, on the other hand, said that Bell had swung his shovel and that when he, Gamble, blocked it with his nightstick, the nightstick had broken. In any event, the nightstick was broken and Gamble retreated to the JAD building, pulling out his service revolver as he did so. Gamble testified that Bell struck him on the head as he, Gamble, entered the door of the building. He said that as he fell, he shot Bell in the leg. Bell kept coming forward, however, and kept striking Gamble with the shovel as

Gamble crawled up a flight of steps. When Gamble reached and opened another door, he fired two shots into Bell's body. Bell's version of these events was different. He said that he had not struck Gamble with the shovel and that three shots had been fired at him when he reached the second door. There were no disinterested eyewitnesses to the events of that morning; and, therefore, the credibility of the parties was an important issue for the jury to decide.

Bell was arrested on charges of aggravated assault, but he was acquitted by a jury on March 29, 1977. The present action by Bell and his alleged common-law wife to recover damages for an alleged assault and battery was commenced on October 19, 1977. On March 27, 1978, the parties stipulated that plaintiffs, appellants herein, could file an amended complaint within ten days. Appellants did not file an amended complaint within the time stipulated. Thereafter, on April 10, 1978, they filed an amended complaint alleging an additional count for malicious prosecution. The trial court sustained preliminary objections to this count and caused it to be stricken because it was brought more than one year after Bell's acquittal.[1] We perceive no error. This was in accord with existing law. See: Act of July 1, 1935, P.L. 503, No. 196, 12 P.S. § 51 (repealed effective June 27, 1978); *Sicola v. First National Bank*, 404 Pa. 18, 170 A.2d 584 (1961).[2] We reject appellants' argument that appellees[3] waived the defense of the statute of limitations merely because they agreed that appellants could file an amended complaint within ten days.

1. The defense of the statute of limitations is properly raised by way of answer and new matter. However, if the plaintiff does not raise any procedural objection to its insertion in preliminary objections, then the plaintiff waives the error and the court may determine the statute of limitations issue on preliminary objections. 2 Goodrich-Amram 2d § 1028(c):3 (1976). Appellants in this case raised no objection to the procedural defect; and, therefore, the court could properly resolve the applicability of the statute of limitations on preliminary objections.

2. The Judicial Code, at 42 Pa.C.S. § 5524, has extended the statute of limitations to two years for malicious prosecution actions.

3. Appellees are Gamble and the City of Philadelphia, which was alleged to be vicariously liable for the actions of Gamble.

The agreement was intended to comply with Pa.R.C.P. 1033, which required filed consent of the adverse party or leave of court to file an amended pleading. By agreeing to allow an amended pleading, appellees did not waive any defenses available to a new cause of action which appellants set forth in their amended complaint.[4]

■■■■ At trial on the complaint alleging an assault and battery, the trial court allowed each defendant three peremptory challenges. Appellants, who were given four peremptory challenges, complain that the two defendants received more peremptory challenges than they did. This was authorized by Pa.R.C.P. 221. There is no abuse of discretion evident. Moreover, appellants failed to argue this issue in the brief filed in the trial court in support of their motion for new trial. The issue, therefore, has not been preserved for appellate review. See: *Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978).

■■■■ At trial, appellants called Gamble as of cross-examination. Gamble's counsel then examined the witness concerning matters inquired into during cross-examination. Gamble was asked: "And your mother got there within how much time after the incident?" At this point, appellants objected. When the trial judge asked the basis for the objection, counsel responded: "Beyond the scope of my examination; and ... defendant's counsel is leading the witness." The trial court overruled the objection. We are satisfied that the question was not leading. The rules on leading questions are "liberally construed in modern practice, with a large measure of discretion in the court to permit parties to elicit any material truth without regard to the technical consideration of who called the witness." *Commonwealth v. Guess*, 266 Pa.Super. 359, 375, 404 A.2d

---

4. It may also be observed that appellant failed to file a timely appeal from the order dismissing his cause of action for malicious prosecution. That order was a final determination of the cause of action stated therefor and was immediately appealable. *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983).

1330, 1338 (1979), quoting *Commonwealth v. Gurreri,* 197 Pa.Super. 329, 332, 178 A.2d 808, 809 (1962). A review of the record discloses also that the question did not improperly exceed the scope of the inquiry made on cross-examination. When a witness with an adverse interest is called as for cross-examination, he may thereafter be questioned as to related matters inquired about during cross-examination. However, when the examination is designed to introduce a defense, the trial court should not allow it. *Rogan Estate,* 404 Pa. 205, 214–215, 171 A.2d 177, 180–181 (1961); *Houston-Starr Co. v. Davenport,* 227 Pa.Super. 186, 190, 324 A.2d 495, 497 (1974). The trial court's ruling on this question, therefore, was not erroneous.

 After the objection had been overruled, the questioning of the witness continued. Appellants argue on appeal that Gamble was then asked a series of questions by his own counsel which were leading. However, appellants made no objection to any succeeding question on grounds that it was leading or, indeed, for any other reason. Any defect in the form of these questions, therefore, was waived. To avoid waiver, a party must make a timely objection. *Rubenstein v. J.E. Kunkle Co.,* 244 Pa.Super. 474, 477 n. 2, 368 A.2d 819, 821 n. 2 (1976). Timeliness requires a specific objection at the proper stage in the questioning of a witness. *Commonwealth v. Hughes,* 268 Pa.Super. 536, 539 n. 3, 408 A.2d 1132, 1134 n. 3 (1979). See also: *Tagnani v. Lew, supra; Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). A specific objection to one leading question is not a continuing objection to the form of later questions. If appellants believed counsel's questions to be leading, they were required to enter an appropriate objection. In this manner, the form of the question asked could have been submitted to the court for a ruling and the form, if defective, could have been corrected. Appellants could not properly object to the form of counsel's questions for the first time after examination of the witness had been completed.

■ Bell's version of the circumstances under which he was shot varied substantially from the version testified to by Gamble. There were no disinterested witnesses; and the credibility of the parties, therefore, was a crucial issue. To attack Bell's credibility, the defense was permitted to show that in 1967 Bell had been convicted on two counts of burglary and larceny. In the one instance, he had stolen a check-writing machine and had used it to write bad checks. In the other, he had broken into a business establishment from where he had stolen payroll checks. These were crimes of dishonesty. Whether Bell's convictions were admissible to attack his credibility was dependent upon the exercise of a sound discretion by the trial court. *Keough v. Republic Fuel and Burner Co.,* 382 Pa. 593, 596, 116 A.2d 671, 672–673 (1955). "In the exercise of its discretion the trial court must view the various aspects of the trial and determine whether the probative value of the offer is outweighed by the risk that its admission will create substantial danger of undue prejudice or of misleading the jury, and must consider also the remoteness of the convictions in question from the date of the offer." *Id.,* 382 Pa. at 596–597, 116 A.2d at 673. See also: *Flowers v. Green,* 420 Pa. 481, 485–486, 218 A.2d 219, 221 (1966). We cannot say that Bell's convictions in this case were so remote as to be wholly irrelevant. Because the convictions were for non-violent offenses, moreover, it was unlikely that evidence thereof would prejudice appellants in the presentation of their substantive claim for damages caused by a shooting. Dishonesty did not equate with violence and aggressiveness. We conclude, therefore, that the trial court did not abuse its discretion by allowing the jury to receive and consider evidence of prior convictions of burglary to attack Bell's credibility.

The defense was also permitted to show that among Bell's neighbors he had a bad reputation for argumentativeness, combativeness and violence. Bell's reputation was tendered by the defense as substantive evidence tending to show that Bell had been the aggressor. There was no

evidence that Gamble knew Bell prior to the night in question. Therefore, it was not contended that Gamble had been aware of Bell's belligerence. Appellants argue that the trial court erred in allowing evidence of Bell's bad reputation for violence.

This issue has not been waived. It was discussed in chambers by counsel and the trial judge, and the trial judge ruled that Bell's reputation would be received to show his propensity for violence. His reputation was held to be relevant to support appellees' contention that Bell had been the aggressor and that Gamble had shot in self-defense. Appellants' counsel took exception to the court's ruling, and the trial judge acknowledged the exception. Appellants were not required to renew their objection when counsel returned to the courtroom. Appellants' objection was not waived because they then agreed to enter a stipulation regarding the testimony of approximately ten reputation witnesses. This stipulation, when read to the jury, made it unnecessary to produce the witnesses for testimony in open court. "[O]nce an objection has been properly made, counsel is not obliged to repeatedly voice objections in a tendentious manner." *Matsko v. Harley Davidson Motor Co.,* 325 Pa.Super. 452, 461, 473 A.2d 155, 159 (1984). Because the issue has not been waived, we proceed to the merits thereof.

The law in criminal cases, at least since *Alexander v. Commonwealth,* 105 Pa. 1 (1884), has been that evidence of a shooting victim's reputation for hostility and violence are admissible on the issue of whether he was the aggressor. See: *Commonwealth v. Amos,* 445 Pa. 297, 302, 284 A.2d 748, 751 (1971). In civil cases, however, it has been said that "evidence of the character of the parties, except where the character is directly in issue, is not admissible." *Porter v. Seiler,* 23 Pa. 424, 430 (1854). Only where, because of "the nature of the issues such evidence is of special importance" is reputation evidence admissible. *American Fire Insurance Co. v. Hazen,* 110 Pa. 530, 537, 1 A. 605, 608 (1885). "It is the nature of the issue itself, and not the consequences to be apprehended from the result,

that puts character in issue.... To be in issue in a technical sense, character must be of particular importance and therefore a material fact in the case." *Greenberg v. Aetna Insurance Co.,* 427 Pa. 494, 498, 235 A.2d 582, 584 (1967). This general rule has been held applicable in tort actions based on an alleged assault and battery. *Porter v. Seiler, supra.* However, the issue in that case was not which party had been the aggressor. Where self-defense is an issue, no appellate court in Pennsylvania, so far as our research has disclosed, has ruled on the admissibility of a party's bad reputation for violence.

Most jurisdictions which have considered the issue, however, have recognized "that where self-defense or aggression is an issue in a civil action for assault and battery, evidence of the bad reputation of the plaintiff for violence is admissible, frequently either *to help determine which party may have been the aggressor,* or to show the defendant's fear and consequent justification for taking an aggressive stance, at least where it is shown that the defendant had knowledge of the plaintiff's reputation." Annot., 91 A.L. R.3d 718, 747 (1979) (footnotes omitted) (emphasis added).

▬ We are of the opinion that this is the better view. Where, as here, the issue is which party was the aggressor, the bad reputation of the plaintiff for violence is of special importance. Bell's character in this case was directly in issue. To a greater extent than in other civil actions involving criminal conduct, it was important in this case to know the disposition of the parties. See: McCormick, *Handbook of the Law of Evidence* § 192, at 571 n. 5 (3d ed. 1984). Moreover, it is difficult to comprehend why, where the issue is the same, the rule should be different in civil cases than it is in criminal cases.

▬ In the absence of a contrary mandate by the Supreme Court, therefore, we adopt the majority rule and hold that the trial court properly allowed evidence of Bell's reputation in the community for argumentativeness, bad

temper and violence. This evidence was relevant to show Bell's propensity for aggressiveness.

The trial court carefully instructed the jury regarding the credibility of witnesses. Included was a specific reference to the consideration to be given to the interest, if any, which a witness had in the outcome of the case. This was adequate. The court was not required to adopt the point for charge submitted by appellants.[5] A trial judge is not required to adopt the exact language of a requested point for charge so long as the form of expression chosen adequately and clearly covers the subject. *McGowan v. Devonshire Hall Apartments*, 278 Pa.Super. 229, 242, 420 A.2d 514, 521 (1980). Similarly, the trial court did not err when it refused to single out police officers by instructing the jury that their testimony was entitled to no special weight. Where credibility of witnesses has been adequately covered by the court's jury instructions, a special charge regarding the credibility of police officers is unnecessary. Cf. *Commonwealth v. Wise*, 298 Pa.Super. 485, 491–492, 444 A.2d 1287, 1290 (1982).

Judgment affirmed.

---

5. Appellants requested that the jury be specifically instructed that police officers, as employees of the City of Philadelphia, were "interested witnesses."