# Bartolewska v. Plappert

C.P. of Bucks County, no. 2007-09116-35.

*Marshall E. Kresman,* for appellant.
*Kimberly Boyer-Cohen,* for appellee.

BALDI, *J.,* August 12, 2010—This litigation arises out of a motor vehicle accident, in which James Plappert (appellant) struck the rear of Paulina Bartolewska's (appellee) vehicle on November 30, 2005, resulting in injuries to appellee. On November 18, 2009, a jury returned a verdict in favor of appellee, awarding $6,422 for her medical bills, and $275,000 for her past and future pain and suffering. On November 25, 2009, appellant filed post-trial motions, but failed to serve same upon this court. In an order dated December 24, 2009, this court ordered the parties, with respect to each issue raised, to identify how and when each issue and/or claim of error was preserved pursuant to Pa.R.C.P. 227.1, with citations to the record, and stated that failure to specify the grounds for relief would result in waiver of the claim(s) and denial of post-trial relief. Post-trial motions were later denied on April 9, 2010. Thereafter, appellant filed a timely notice of appeal to the Superior Court and a timely concise statement of matters complained of on appeal. In accordance with Pa.R.A.P. 1925(a), we file this opinion.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Appellant has raised the following issues on appeal:

(1) Whether this court erred in allowing Anca Bereanu M.D. to testify as to the permanency of appellee's injuries when Dr. Bereanu's testimony exceeded the fair scope of her expert report and unfairly prejudiced appel-

lant, and whether this court erred in finding that appellant failed to properly preserve his objection to Dr. Bereanu's testimony regarding permanency;

(2) Whether this court erred in precluding testimony and/or evidence that appellee was fired from her job for reasons other than as a result of her injuries, due to the fact that Dr. Bereanu and the appellee herself opened the door to the presentation of such testimony and/or evidence;

(3) Whether this court erred in denying appellant's request for a new trial or substantial remittitur where the jury award of $275,000 for pain and suffering which appellant contends was plainly and shockingly excessive and against the weight of evidence.

## DISCUSSION

The first issue raised by appellant in this appeal is whether the court erred in allowing one of appellee's experts and treating physicians, Dr. Anca Bereanu, to testify as to the permanency of appellee's injuries. Appellant also raised this issue in his post-trial motions, but contrary to this court's order, appellant failed to identify, in his post-trial motions, where in the trial record his objection to this testimony was preserved.

That notwithstanding, we have closely reviewed the transcripts of the trial proceedings, including the transcripts of the videotaped deposition of Dr. Bereanu, and find appellant's contention of error to be without merit for several reasons. First, appellant failed to properly preserve his objections to the specific questions regarding permanency during the videotaped deposition which

was later introduced at trial for the benefit of the jury. The transcript of that deposition indicates that appellant did not object to the questions asked of Dr. Bereanu regarding the permanency of plaintiff's injuries. See N.T. 6/26/09, pp. 72-74. Although we do note that appellant made one single objection at the outset of Dr. Bereanu's testimony, this objection was in no way a continuing objection.[1] Our Superior Court has held that a party is required to make specific objections in order to avoid waiver of such an objection. See *Bell v. City of Philadelphia,* 341 Pa. Super. 534, 491 A.2d 1386 (1995). It is insufficient to raise one general objection at the outset, fail to object to subsequent specific questions, and then raise objections at a later time. "To avoid waiver, a party must make a timely objection . . . Timeliness requires a specific objection at the proper stage in the questioning of a witness." *Id.* at 542, 491 A.2d at 1390. Appellant's failure to timely object serves as a waiver of this issue.

Second, appellant argues that Dr. Bereanu's testimony regarding permanency unfairly prejudiced appellant because appellant was deprived an opportunity to explore, respond to and defend against Dr. Bereanu's

---

1. At the beginning of the doctor's videotape deposition, appellant's counsel stated, with regard to the issue of permanency, the following: "And I will just make an objection on the record at this point. On June 19 a report from the doctor was supplied to me dated June 12, 2009. It was supplied after this case was praeciped for trial and after discovery was foreclosed. I object to any mention of permanency of the injuries as the same was not included in the previous records." Plaintiff's counsel then offered a response to this statement and there was no agreement by counsel that an issue was preserved for trial or that appellant's counsel need not make timely objection when questions were asked.

permanency opinions. Dr. Bereanu was one of appellant's treating physicians who was called as an expert witness. She was not an expert witness who was retained solely for the purpose of litigation. See N.T. 6/26/09, pp. 21, 46, 49, 53 and 65. Her opinions were not developed in anticipation of litigation, and therefore, pursuant to *Miller v. Brass Rail Tavern Inc.*, 541 Pa. 474, 664 A.2d 525 (1995), only the general discovery obligations of Pa.R.C.P. 4003.1 were applicable to the physician's testimony. Furthermore, appellant was on notice that permanency was an issue for trial, as the issue of permanency was raised in the report of another treating physician of appellee's, Dr. James Brady, and therefore plaintiff cannot seriously claim that he was "surprised" and unfairly deprived of an opportunity to rebut Dr. Bereanu's testimony. N.T. 11/16/09, p. 37. Finally, we note that it appears that the report appellant complains of was submitted in June 2009, approximately five months prior to the trial date, which was more than sufficient time for appellant to take steps to respond to and rebut both physicians' opinions regarding permanency. Accordingly, we find that this contention of error has no merit.

Appellant next argues that this court improperly precluded testimony and/or evidence that appellee was terminated from her employment due to misstatements regarding her prior work experience as a bartender, rather than as a result of her injuries. Again, although appellant raised this issue in his post-trial motions he failed to identify for the court where in the trial record this ruling was made and where appellant preserved his objection(s). Our review of the transcript of the proceed-

ings indicate that appellant sought to introduce this evidence by impeaching appellee on cross-examination with a form completed by appellee's employer in response to an unemployment compensation claim filed by appellee. See exhibit D-4. On the form, appellee's former employer had made the following notation in regards to the reason for appellee's separation from employment: "falsifying records. Had no prior bartending experience." It must be noted that the appellant did not intend to call the employer and present live testimony, subject to cross examination, but rather appellant intended on bringing out during cross-examination, the employer's written response to appellee's claim for unemployment compensation.

We found that this line of questioning was irrelevant to the issues at trial, due to the fact that appellee did not present a wage loss claim to the jury. Had a wage loss claim been submitted to the jury, information regarding the reasons why appellee had been terminated from her employment would have been relevant. However, in this case, the discrete issue regarding whether or not appellee had actually been terminated for lying about her work experience was simply irrelevant.

We recognize that Pa.R.E. 607 allows any party to attack the credibility of a witness by any properly admitted evidence relevant to that issue; however, we note that impeachment methods are subject to Pa.R.E. 401 and 402, regarding the admissibility of relevant evidence. At trial, only relevant evidence is admissible, that is, only evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence. See P.R.E. 401. The issues regarding appellee's employment termination had little to no relationship to the issues in the case at trial. Furthermore, although the credibility of a witness may be impeached at trial, Pennsylvania law "does not permit the impeachment of a witness on collateral matters; the grounds for contradicting a witness must be germane to the issues at trial." See *McGoldrick v. The Pennsylvania Railroad Company,* 430 Pa. 597, 600, 241 A.2d 90, 92 (1968); and *Walley v. Iraca,* 360 Pa. Super. 436, 444, 520 A.2d 886, 890 (1987). In *McGoldrick,* our Supreme Court stated:

"It is a well recognized principle of law that a witness may not be contradicted on 'collateral' matters. *Zubrod v. Kuhn,* 357 Pa. 200, 53 A.2d 604 (1947). As we stated in *Commonwealth v. Petrillo,* 341 Pa. 209, 223, 19 A.2d 288, 295 (1941): 'No witness can be contradicted on everything he testified to in order to 'test his credibility.' The pivotal issues in a trial cannot be 'sidetracked' for the determination of whether or not a witness lied in making a statement about something which has no relationship to the case on trial.' Contradicting evidence is 'collateral' if it may not be admitted at trial for any purpose independent of the contradiction. *Commonwealth v. Petrillo, supra* at 224, 19 A.2d at 295; *Commonwealth v. Neill,* 362 Pa. 507, 521, 67 A.2d 276, 282 (1949) (concurring opinion); 3 Wigmore, Evidence, §1003 (3d ed. 1940)." *McGoldrick,* at 600, 241 A.2d at 92.

At trial, the undersigned stated the following regarding the impeachment issue:

"I'm going to state on the record for counsel's benefit questions involving former employment . . . I've ex-

plained to counsel, certainly there are issues that can be brought out with respect to the plaintiff's ability to work in terms of her physical ability. That's certainly relevant. I have instructed defense counsel that she may not make reference to whether or not the plaintiff was discharged from her former employment because of a misstatement on her application. In other words, I was shown the application that she made, she filed. Apparently there was an unemployment case that followed the firing. Apparently that was argued. I think she was successful in the unemployment case.

"My concern —and I've explained to counsel, number one, plaintiff is not making a wage loss claim. So whether or not she's able to work in that job or not able to work in that job is only relevant to the extent that it has to do with her physical issues, limitations, and I am concerned that if counsel is allowed to say isn't it true you were fired because of a misstatement on your employment application, that that would be grossly unfair. The employer is not here to cross-examine. Furthermore, it would be ludicrous for us to turn this trial into a lawsuit and a fight over that collateral issue. It would besmirch the plaintiff's character so that she would have to defend herself, and we would ultimately have to have a trial on whether or not she in fact accurately put forth information in her employment application.

"So those areas, I warn counsel to stay away from them. Don't bring them up and don't attack the plaintiff's credibility using what her former employer tried to use to defend the unemployment claim. I think that makes it clear, counsel." N.T. 11/17/09, pp. 2-4.

Appellant's counsel went on to question the appellee, and brought out information that appellee and her em-

ployer had different views as to the true reasons for her discharge, and that appellee had actually succeeded in her unemployment claim case against her employer and was awarded unemployment. N.T. 11/17/09, pg. 7. The fact that another fact-finder in another hearing had already found the appellee had not made material false statements on her employment application further supports this court's ruling that the issue of appellee's employment termination was irrelevant and collateral to this issues in this case and appellant's attempt to bring in the former employer's self-serving written statement without presenting the employer live to be cross-examined was improper, and to admit the hearsay into evidence would have been error.

The final issue raise by appellant is whether or not this court erred in denying appellant's request for a new trial on damages or a substantial remittitur of the verdict where appellant contends that the verdict was plainly and shockingly excessive.[2] When a request is made for a new trial, the trial court must follow a two-step process. The trial court must determine whether a factual, legal or discretionary mistake was made at trial. Second, if the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. *Bey v.*

---

2. Appellant's concise statement of matters complained of seems to indicate that they intend to argue that the jury was not presented sufficient evidence to find in appellee's favor. To the extent that appellant is raising that argument, we note that appellant failed to present a motion for directed verdict or non-suit to this court following the conclusion of appellee's case, and therefore, pursuant to *Bennyhoff v. Pappert,* 790 A.2d 313 (Pa. Super. 2001), such a claim would be waived on appeal.

340

*Sacks,* 789 A.2d 232, 236-37 (Pa. Super. 2001) citing *Harman v. Borah,* 562 Pa. 455, 469, 756 A.2d 1116, 1123 (2000). A new trial is not justified simply because an irregularity occurred at trial or a different judge would have ruled differently. The moving party must prove that he or she has suffered some prejudice by the error. *Id.* In the present case, the court reviewed appellant's allegations of error when the request for a new trial was made in appellant's post-trial motions, and determined that no error had occurred. Although appellant requests a new trial on the grounds that the damages awarded were excessive, "a new trial should be granted only in truly extraordinary circumstances, *i.e.,* 'when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'" *Armbruster v. Horowitz,* 572 Pa. 1, 9-10, 813 A.2d 698, 703 (2002) citing *Commonwealth v. Brown,* 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994).

We do not believe the jury's verdict was excessive if they found the plaintiff credible. They obviously found her credible, and therefore, the verdict was a fair and reasonable reflection of appellee's physical and emotional injuries. Appellee testified on direct examination that she has ongoing neck pain, of a pulsing and throbbing variety, with radiating pain down her arms and to her fingertips. N.T. 11/16/09, pp. 102-103. Although the pain is less severe than it was in the years following the accident, appellee testified that she continues to have constant pain, tingling sensations, and radiating pain that feels like a "bolt of electricity going down [her arm]." N.T. 11/16/09. p. 104. Appellee also testified that she continues to experience throbbing lower back pain, with

radiating pain down both her legs. N.T. 11/16/09, pp. 105-106.

The effect of these physical injuries has resulted in appellee's inability to sit in one position for a long period of time without incurring pain, study for school tests, write with her right hand, or run, jog, or be physically active, which she used to do frequently. N.T. 11/16/09, p. 105. Appellee further testified that she is unable to do tasks around the home, and that she used to be an active, fit, and happy-go-lucky person before the accident, but because of the constant pain she now feels like she is depressed and in the physical condition of someone much older than her age of 29. *Id.* at 110-11. Appellee experiences depression because of the constant pain, and anxiety due to the fact that she feels she will be unable to start a family, or pursue a marital relationship due to her physical limitations. *Id.* at 111-12.

Two of her treating physicians, Dr. James Brady and Dr. Anca Bereanu, testified regarding the serious permanent nature of plaintiff's injuries. Dr. Brady, the appellant's treating chiropractor, opined that appellee suffered from "right C-4, C-5 radiculopathy, left C-6 radiculopathy, bilateral L-4 and L-5 radiculopathy, which is all in [his] opinion permanent in nature because the nerves have been damaged now for four years, disc bulges at C-5, C-6, C-7 and at L-4 and L-5, chronic sprain and strain which has damaged the tendons and connective tissues and ligaments in the neck and the lower back, and myofascitis of the cervical and lumbar pelvic spine, right shoulder pain and pain into the right arm with numbness and tingling." N.T. 6/30/09, p. 45. Dr. Brady further stated that he "believed that since [his examination of

appellee] is approximately four years after the accident, her injuries are permanent in nature due to her bulges, her radiculopathies and her chronic sprain and strain and her limitations in her daily life." *Id.* at 48-49.

Likewise, Dr. Bereanu testified that an EMG test with the appellee showed "a right C-4 and C'-5 active radiculopathy, a C-6 radiculopathy and a bilateral L-4, L-5, which stands for lumbar number 4, number 5, active radiculopathy." N.T. 6/26/09, pp. 58-59. Bereanu went on to testify that "radiculopathy is an abnormal process, a disorder or a disease which involves the nerve roots . . . [it] is always a permanent injury in the sense that we know, as far as it is at present moment, that super specialized cells, such as the neurons, once they are damaged, they do not regenerate. So, in other words, we keep losing neurons as we live through life, as an aging process, and, then if there is a disease or if there is trauma, a radiculopathy is a permanent loss of nerve fibers." N.T. 6/26/09, p. 60. Dr. Bereanu's diagnosis of appellee included cervical radiculopathy, lumbosacral radiculopathy, and cervical, thoracic and lumbar sprain and strain and posttraumatic myofasctis, as well as status post concussion. N.T. 6/26/09, p. 67.

Based on the foregoing testimony, this court finds that the record contains more than sufficient evidence to support the jury's finding that appellee suffered great pain and discomfort as a result of the motor vehicle accident, and will continue to experience this pain and discomfort in the future. Accordingly, the jury was entitled to find that her physical injuries have affected her daily physical and emotional life.

The standard we must use in determining whether remittitur should be granted is whether the award of

damages falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake or corruption. *Haines v. Raven Arms,* 536 Pa. 452, 640 A.2d 367 (1994). Unless the circumstances of the award cry out for judicial interference, it is the duty of this court to enforce the jury's verdict. *Daley v. John Wanamaker Inc.,* 317 Pa. Super. 348, 352, 464 A.2d 355, 358 (1983). We have no reason to find that the jury's verdict was not based upon the evidence and we do not believe the verdict represents the jury's prejudice, partiality, mistake or corruption. See *Haines v. Raven Arms,* 536 Pa. 452, 640 A.2d 367 (1994).

Based on all of the above, we find the issues which appellant has raised in this appeal lack merit.

### In re Y.S. and J.A.H.