**Barry G. STUMPF, Appellant**

v.

**Terry L. NYE, Appellee.**

Superior Court of Pennsylvania.

Argued March 18, 2008.

Filed June 3, 2008.

Richard A. Estacio, Lancaster, for appellant.

Gregory S. Hirtzel, Lancaster, for appellee.

BEFORE: STEVENS, LALLY–GREEN, and FITZGERALD*, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Lancaster County in favor of Terry L. Nye and against Barry G. Stumpf and Doug Esbenshade in the total amount of $100,000.00. This matter arose when Mr. Stumpf and Mr. Esbenshade committed an assault and battery upon Mr. Nye following a boxing match. On appeal, Mr. Stumpf alleges[1] (1) the trial court erred in excluding evidence of Mr. Nye's previous violent altercations, which tended to show his character/reputation for violence, (2) the trial court erred in excluding evidence

---

* Former Justice specially assigned to the Superior Court.

1. Mr. Esbenshade has not filed an appeal in this case.

that Mr. Nye pleaded guilty to the summary offense of disorderly conduct, and (3) the trial court erred in charging the jury on conspiracy.[2] We affirm.

¶ 2 The relevant facts and procedural history are as follows: On September 19, 2001, Appellant Barry G. Stumpf filed a civil complaint against Appellee Terry L. Nye alleging that on March 24, 2001, at 50 Sunnybrook Road, Mr. Nye physically assaulted Mr. Stumpf, resulting in pain, contusions, and post-traumatic stress, as well as damage to a necklace, which Mr. Stumpf was wearing during the assault. Mr. Stumpf raised claims of intentional assault and negligence.[3] Mr. Nye filed an answer with new matter and a counterclaim alleging that he provided a boxing ring for matches, which were held at the Sunnybrook Ballroom. On the day in question, when Mr. Nye and his son were disassembling the boxing ring following a series of matches, Mr. Stumpf and several boxers, who Mr. Stumpf managed, physically attacked Mr. Nye. Mr. Nye suffered pain, contusions, and emotional distress, as well as financial loss due to other promoters refusing to utilize his services. Mr. Nye raised various claims, including intentional assault, battery, and negligence, and he raised the claims against Mr. Stumpf, as well as Doug Esbenshade, who was a boxer managed by Mr. Stumpf, and the "J" Group.[4]

¶ 3 The matter proceeded to arbitration; the Board of Arbitrators found in favor of Mr. Stumpf as to his negligence claim only and awarded him $50,000.00. All other claims against the parties were dismissed. Mr. Nye filed an appeal from the Board of Arbitrators' award, seeking a jury trial. Since Mr. Esbenshade did not file an answer to Mr. Nye's counterclaim, on January 23, 2007, default judgment was entered against Mr. Esbenshade and in favor of Mr. Nye, with damages to be determined at trial.

¶ 4 On February 8, 2007, Mr. Nye filed a motion *in limine* seeking an order excluding Mr. Stumpf from introducing evidence of Mr. Nye's plea of guilty to the summary offense of disorderly conduct, as well as evidence tending to prove Mr. Nye had a reputation for violence and was the aggressor in prior altercations. Mr. Stumpf filed a brief in opposition to the motion *in limine*. By order entered on February 9, 2007, the trial court granted Mr. Nye's motion *in limine*, expressly indicating that specific instances of prior altercations, as well as pleas to summary offenses, would be excluded. Moreover, Mr. Nye sought to exclude Mr. Stumpf's efforts to help poor and at-risk children and his election

---

2. In his "Statement of Questions Involved," Mr. Stumpf presents four issues. However, the argument portion of his brief contains only three separate sections. We conclude Mr. Stumpf's first and third issues, which are raised in his "Statement of Questions Involved," are actually the same issue, and therefore, we have addressed the issues together.

3. Mr. Stumpf raised a claim for libel; however, Mr. Nye subsequently filed a motion for partial summary judgment as to the libel claim, and by order entered on March 11, 2004, the trial court granted summary judgment, thereby dismissing the libel claim. Also, Mr. Stumpf raised a claim for intention-

al infliction of emotional distress; however, Mr. Nye filed a motion to dismiss the claim, which the trial court granted on February 13, 2007.

4. The "J" Group is a business with holdings in the East Side Gym, where Mr. Stumpf is the manager. By stipulation of all parties, the "J" Group was dismissed from the action on December 23, 2002. Moreover, we note that Mr. Nye initially raised claims against boxer Ryan Pentz and the East Side Gym; however, there is no indication from the record that Mr. Nye proceeded with these claims after the Board of Arbitrators dismissed them.

to the Amateur Gold Gloves Boxing Hall of Fame. By order entered on February 12, 2007, the trial court granted the motion, thereby excluding the evidence.

¶ 5 The matter proceeded to a jury trial, at the conclusion of which the jury concluded Mr. Nye did not commit assault or battery upon Mr. Stumpf and Mr. Nye was not negligent; consequently, the jury awarded Mr. Stumpf zero damages. The jury further concluded that Mr. Stumpf was 100% comparatively negligent and his negligence was the sole cause of his harm. Regarding Mr. Nye's counterclaim against Mr. Esbenshade, the jury concluded Mr. Esbenshade's assault/battery was the factual cause of harm to Mr. Nye, Mr. Esbenshade conspired with Mr. Stumpf and others to commit the assault/battery of Mr. Nye, and awarded Mr. Nye $25,000.00 for damages caused by Mr. Esbenshade's actions. Regarding Mr. Nye's counterclaim against Mr. Stumpf, the jury concluded Mr. Stumpf was liable for the assault/battery of Mr. Nye, as well as negligence, and awarded Mr. Nye $25,000.00 for Mr. Stumpf's actions. The jury concluded Mr. Nye was not comparatively negligent. The jury further concluded Mr. Stumpf's actions were outrageous, and therefore, awarded Mr. Nye punitive damages in the amount of $75,000.00. The jury found that Mr. Stumpf conspired with Mr. Esbenshade, as well as others, to commit the assault/battery of Mr. Nye.

¶ 6 By order entered on February 22, 2007, the trial court molded the verdict as follows:

[A] verdict is hereby rendered in favor of Defendant Terry Nye on his Counterclaim against Plaintiff Barry Stumpf in the total amount of $100,000.00 ($25,-000.00 compensatory and $75,000.00 punitive) and in favor of Terry Nye on his claims against Additional Defendant Doug Esbenshade in the amount of $25,000.00. Said amount of $25,000.00 against Barry Stumpf and Doug Esbenshade is joint and several, resulting in a total verdict amount of $100,000.00.

¶ 7 On February 23, 2007, Mr. Stumpf filed a timely post-trial motion seeking a new trial on various grounds, and by opinion and order filed on April 24, 2007, the trial court denied Mr. Stumpf's post-trial motion. On May 2, 2007, judgment was entered in favor of Mr. Nye and against Mr. Stumpf and Mr. Esbenshade, and Mr. Stumpf filed the instant, timely appeal. On June 5, 2007, the trial court ordered Mr. Stumpf to file a statement pursuant to Pa.R.A.P. 1925(b), and notice was provided to all parties. On June 15, 2007, Mr. Stumpf filed a timely Pa.R.A.P. 1925(b) statement, and the trial court filed a brief Pa.R.A.P. 1925(a) statement indicating the reasons for its decision could be found in its previously filed opinion.

■ ¶ 8 Mr. Stumpf's first claim is that the trial court erred in excluding evidence of Mr. Nye's reputation for violence in the form of testimony from Leah Mellinger and Doug Esbenshade. Specifically, Mr. Stumpf contends Ms. Mellinger and Mr. Esbenshade should have been permitted to testify Mr. Nye had told them he "had beaten up an employee of Lowe's and an employee of PP & L who had parked in front of his kickboxing gym." Mr. Stumpf's Brief at 7. Mr. Stumpf argues such testimony would have been admissible to rebut Mr. Nye's claim that Mr. Stumpf was the first aggressor on March 24, 2001.

■ ¶ 9 Initially, we note that our standard of review of a trial court's decision to admit or exclude evidence is well-settled:

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admis-

sibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."

*Geise v. Nationwide Life and Annuity Co. of America,* 939 A.2d 409, 417 (Pa.Super.2007) (quotations omitted).

¶ 10 The issue of whether reputation for violence may be admitted in a civil case alleging assault and battery was first discussed by this Court in *Bell v. Philadelphia,* 341 Pa.Super. 534, 491 A.2d 1386 (1985). In *Bell,* James Gamble, a police officer who had completed his shift, was waiting for a ride home when Maurice Bell approached him. The two men engaged in a verbal discussion and their versions of what transpired next differed; there were no disinterested witnesses and the credibility of the parties was a crucial issue. Gamble indicated Bell was the aggressor, striking Gamble with a shovel, which required Gamble to shoot Bell. Bell, on the other hand, testified Gamble was the aggressor, he never struck Gamble with the shovel, and Gamble shot him. Bell filed a civil complaint against Gamble alleging damages related to an assault and battery. Gamble sought to introduce evidence that, among Bell's neighbors, he had a bad reputation for argumentativeness, combativeness, and violence. On this issue, this Court stated the following:

Bell's reputation was tendered by the defense as substantive evidence tending to show that Bell had been the aggressor. There was no evidence that Gamble knew Bell prior to the night in question. Therefore, it was not contended that Gamble had been aware of Bell's belligerence. Appellants argue that the trial court erred in allowing evidence of Bell's bad reputation for violence....

The law in criminal cases, ... has been that evidence of a shooting victim's reputation for hostility and violence are admissible on the issue of whether he was the aggressor. In civil cases, however, it has been said that 'evidence of the character of the parties, except where the character is directly in issue, is not admissible.' Only where, because of 'the nature of the issues such evidence is of special importance' is reputation evidence admissible. 'It is the nature of the issue itself, and not the consequences to be apprehended from the result, that puts character in issue.... To be in issue in a technical sense, character must be of particular importance and therefore a material fact in the case.' This general rule has been held applicable in tort actions based on an alleged assault and battery. *Porter v. Seiler,* [23 Pa. 424, 430 (1854)]. However, the issue in that case was not which party had been the aggressor. Where self-defense is an issue, no appellate court in Pennsylvania, so far as our research has disclosed, has ruled on the admissibility of a party's bad reputation for violence.

Most jurisdictions which have considered the issue, however, have recognized 'that where self-defense or aggression is an issue in a civil action for assault and battery, evidence of the bad reputation of the plaintiff for violence is admissible, frequently either to help determine which party may have been the aggres-

sor, or to show the defendant's fear and consequent justification for taking an aggressive stance, at least where it is shown that the defendant had knowledge of the plaintiff's reputation.'

We are of the opinion that this is the better view. Where, as here, the issue is which party was the aggressor, the bad reputation of the plaintiff for violence is of special importance. Bell's character in this case was directly in issue. . . .

[W]e adopt the majority rule and hold that the trial court properly allowed evidence of Bell's reputation in the community for argumentativeness, bad temper, and violence. The evidence was relevant to show Bell's propensity for aggressiveness.

*Bell,* 491 A.2d at 1390–1391 (citations, quotations, and emphasis omitted).

¶ 11 In response to this Court's opinion in *Bell,* as the Comment to Pennsylvania Rule of Evidence 404 indicates, Subsection 404(a)(2)(iii) was created. Rule 404 provides, in relevant part, that:

(a) **Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

\* \* \*

(2) *Character of alleged victim.*

\* \* \*

(iii) In a civil action for assault and battery, evidence of a character trait of violence of the plaintiff may be admitted when offered by the defendant to rebut evidence that the defendant was the first aggressor.

Pa.R.E. 404(a)(2)(iii) (emphasis in original). As the Comment to Rule 404 indicates:

This section promulgates a general rule that evidence of a person's character or trait of character is not admissible to prove conduct in conformity therewith on a particular occasion. The rationale is that the relevance of such evidence is usually outweighed by its potential for creating unfair prejudice, particularly with a jury.

Pa.R.E. 404, Comment.

¶ 12 Regarding the method of proving character, Pa.R.E. 405 provides, in relevant part, that:

(a) **Reputation evidence.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination of the reputation witness, inquiry is allowable into specific instances of conduct probative of the character trait in question. . . .

(b) **Specific instances of conduct.** Specific instances of conduct are not admissible to prove character or a trait of character, except as follows:

(1) In civil cases where character or a trait of character is admissible as an element of a claim or defense, character may be proved by specific instances of conduct.

Pa.R.E. 405(a), (b)(1) (emphasis in original). As the Comment to Rule 405 indicates "[r]eputation evidence is an exception to the hearsay rule under Pa.R.E. 803(21)."

¶ 13 However, even when evidence meets the requirements of the aforementioned Rules of Evidence, the evidence may still be excluded if "its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403. " 'Unfair prejudice' means a tendency to suggest decision on an improper basis or

to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, Comment.

¶ 14 In the case *sub judice*, Mr. Stumpf argues two witnesses should have been permitted to testify that Mr. Nye admitted to them he had physically assaulted a Lowe's and PP & L employee on a prior occasion. Mr. Stumpf contends such is a proper method of introducing evidence of Mr. Nye's character trait/reputation for violence. We disagree.[5]

¶ 15 Here, while we agree with Mr. Stumpf that *Bell* and Pa.R.E. 404(a)(2)(iii) would generally permit character witnesses to testify regarding Mr. Nye's character/reputation for violence, we disagree that the method proffered by Mr. Stumpf was proper. Mr. Stumpf was not seeking to offer general testimony as to Mr. Nye's reputation for violence in the community. Rather, he was seeking to introduce two witnesses' testimony that Mr. Nye told them he had physically assaulted a Lowe's and PP & L employee. That is, he was seeking to introduce two specific instances of conduct, which the witnesses were told about and did not witness directly.[6]

¶ 16 Noticeably absent from Mr. Stumpf's brief or reply brief is the development of any argument or citation to authority supporting the conclusion that

these specific instances of conduct were admissible on cross-examination pursuant to Pa.R.E. 405(a) or related to an element of the claim or defense, as directed by Pa.R.E. 405(b)(1).[7] We decline to become counsel for Mr. Stumpf and develop this issue for him on appeal. *See Bombar v. West American Insurance Company*, 932 A.2d 78 (Pa.Super.2007). In any event, the trial court concluded the probative value of the proffered character testimony was outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* Trial Court Opinion filed 4/24/07 at 5–8. We find no abuse of discretion in this regard.

 ¶ 17 Mr. Stumpf's next claim is the trial court erred in excluding evidence that Mr. Nye pleaded guilty to the summary offense of disorderly conduct in connection with the incident at issue. We conclude the trial court did not err in excluding such evidence.

¶ 18 In *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965), the Pennsylvania Supreme Court concluded that a defendant's criminal conviction for extortion was admissible in a subsequent civil trial, which involved the same operative facts. However, in so ruling, the Supreme Court stated the following:

---

**5.** To the extent Mr. Stumpf contends the witnesses' proposed testimony was admissible under Pa.R.E. 802(25) as an admission by a party-opponent, we find the issue to be waived. Mr. Stumpf did not present this theory in either his post-trial motion or court-ordered Pa.R.A.P. 1925(b) statement. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998) (holding any issue not raised in a court-ordered 1925(b) statement is deemed to be waived); *Jackson v. Kassab*, 812 A.2d 1233 (Pa.Super.2002) (*en banc*) (holding issue must be raised in post-trial motion in order to be preserved).

**6.** It bears mentioning that said witnesses were Mr. Esbenshade, against whom Mr. Nye

had received a default judgment prior to trial, and Mr. Esbenshade's wife.

**7.** We note that, in his opposition to Mr. Nye's motion *in limine*, his post-trial motion, and his court-ordered Pa.R.A.P. 1925(b) statement, Mr. Stumpf asserted the specific incidents of conduct were admissible pursuant to "Pa.R.E. 404(a)(2)(iii)." That is, Mr. Stumpf did not suggest in his opposition to Mr. Nye' motion *in limine*, post-trial motion, or court-ordered Pa.R.A.P. 1925(b) statement that the witnesses' proposed testimony regarding alleged prior specific incidents was admissible under Pa.R.E. 405. *See Lord, supra; Jackson, supra.*

The defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in a cloak of presumed innocence. His case was twice presented to a federal jury which found him guilty of extortion beyond a reasonable doubt, upon the same facts which are now urged as the basis for his civil liability. To now hold that the effect of those jury determinations is nil not only would be to fly in the face of reason but would also be a general indictment of the whole American jury system ... The defendant should not now be heard to deny that which was established by his prior criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself. Defendant has had his day in court and has failed to instill even a reasonable doubt in the collective mind of his then jury. No valid reason exists why he should be given a chance to try his luck with another jury.

In so deciding, we recognize a valid existing distinction in cases involving the record of conviction of relatively minor matters such as traffic violations, lessor misdemeanors, and matters of like import. Especially in traffic violations, expediency and convenience, rather than guilt, often control the defendant's "trial technique." In such cases, it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter (civil liability), which was probably not within contemplation at the time of the conviction. Compare also the effect given in Pennsylvania to a plea of *nolo contendere*: *Teslovich v. Fireman's Fund Ins.*

*Co.*, 110 Pa.Super.Ct. 245, 168 A. 354 (1933).[8]

The policy shifts with regard to major criminal convictions such as the one presented. We find it incredible in such a situation that a defendant would present less than his best defense, knowing that his failure would result in the loss of substantial property, or even his liberty.

*Hurtt*, at 498–99, 206 A.2d at 626–627 (footnote added).

¶ 19 Recognizing the distinction made between summary and non-summary offenses, the Supreme Court in *Loughner v. Schmelzer*, 421 Pa. 283, 218 A.2d 768 (1966), concluded that evidence the plaintiff, in connection with an automobile accident, had been convicted of a summary traffic violation was inadmissible in a civil suit for damages arising out of the same traffic violation. In so doing, the Supreme Court reiterated that "an important distinction exists between traffic violations and lesser misdemeanors on the one hand and felonies and their consequences on the other hand." *Id.* at 285, 218 A.2d at 769. The Supreme Court further indicated "[w]e see no valid distinction between a guilty plea and a verdict of guilty in summary conviction cases. In short, we hold that the evidence of plaintiff's conviction of a violation of the Motor Vehicle Act was inadmissible in this civil action." *Id.* at 285, 218 A.2d at 769.

¶ 20 Thereafter, in *Folino v. Young*, 523 Pa. 532, 568 A.2d 171 (1990), the Supreme Court concluded that evidence of a defendant's conviction for driving at an unsafe speed could be introduced in a negligence case. In so doing, the Supreme Court concluded that the defendant's "failure to drive at a safe speed was an operative fact in his vehicular homicide conviction. Ve-

8. In *Teslovich,* this Court concluded a plea of *nolo contendere* was not admissible in a civil action upon a fire policy loss resulting from the fire for which the insured was prosecuted.

hicular homicide is clearly a non-summary offense as it entitles an accused to a jury trial and is punishable by up to five years imprisonment." *Id.* at 535, 568 A.2d at 172 (citations omitted). Essentially, after analyzing *Hurtt* and *Loughner,* the Supreme Court concluded that a conviction for a summary offense is admissible in later civil proceedings when the summary offense is a necessary operative fact in a non-summary conviction. The Supreme Court indicated that:

> A reading of the above decision in *Hurtt* illustrates that the court only sought to insure that the party bound by the prior determination had adequate incentive to contest the issue and an adequate forum in which to litigate. Clearly these requirements were satisfied in the instant action. Here the appellant was faced with a possible five year period of incarceration and was provided with trial by jury. This Court in *Hurtt* made it absolutely clear that once there is a finding of guilt by jury or judge, a collateral attack upon such a finding will not be allowed unless it is established that the conviction was procured by fraud, perjury or some manner of error sufficient to upset the conviction. The rule is predicated upon society's recognition of the bench or jury trial system as the most equitable forum and the recognition by this Court in *Hurtt* that commission of a serious offense entitles the defendant to a jury trial. Accordingly, we find the appellant's claim to be frivolous. In so holding however, we reiterate the strong sentiment expressed in *Hurtt,* and later applied in *Loughner,* that convictions for summary offenses by themselves, where an accused is not entitled to a jury trial, are inadmissible.

*Folino,* at 536–537, 568 A.2d at 173–174 (footnote omitted). *See Rox Coal Co. v. Workers' Compensation Appeal Board,* 570 Pa. 60, 807 A.2d 906 (2002) (discussing *Folino's* holding that a summary offense conviction is inadmissible unless the summary offense is a necessary operative fact in a felony or misdemeanor conviction); *Dickens v. Barnhart,* 711 A.2d 513, 516 (Pa.Super.1998) (holding the appellee's conviction for a traffic offense was inadmissible in a civil trial since "issues like expediency and convenience, rather than guilt, often control trial technique in cases involving a summary traffic violation"); *Stidham v. The Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945 (1992) (holding guilty plea to crime of third-degree murder was admissible to show McLaughlin killed Stidham but the plea did not conclusively establish intent for purposes of determining coverage under homeowner's policy).

¶ 21 As the aforementioned authority demonstrates, guilty pleas to summary offenses and other minor matters are generally inadmissible in subsequent civil proceedings arising out of the same incident. The policy behind this rule is that convenience, rather than guilt, often controls the defendant's trial technique. An exception to this general rule is when the summary offense is an operative fact in a non-summary criminal offense, as occurred in *Folino, supra.* In the case *sub judice,* Mr. Nye pled guilty to the summary offense of disorderly conduct in connection with the altercation at issue. The disorderly conduct offense was a relatively minor matter akin to a traffic violation and there is no evidence that it was an operative fact in a non-summary criminal offense. Therefore, Mr. Nye's guilty plea to the summary offense, standing alone, was inadmissible in the subsequent civil trial, and we find no trial court error in excluding the guilty

plea. *See Folino, supra; Loughner, supra; Hurtt, supra.*

■ ¶ 22 Mr. Stumpf's final claim is that the trial court erred in charging the jury on conspiracy since there was no factual basis for the charge. Specifically, Mr. Stumpf argues there is no evidence that Mr. Stumpf and others agreed to attack Mr. Nye. We find this issue to be waived.

■ ¶ 23 Pennsylvania Rule of Appellate Procedure 302(b) provides that "[a] general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of." Moreover, our courts have made clear that an "appellant must make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed." *McManamon v. Washko,* 906 A.2d 1259, 1282 (Pa.Super.2006) (citation omitted). *See Straub v. Cherne Industries,* 583 Pa. 608, 880 A.2d 561 (2005) (holding an appellant must object to the jury instruction to preserve challenges for appeal).

¶ 24 In the case *sub judice,* we have reviewed the certified record, and we conclude Mr. Stumpf did not object to the trial court's jury instruction on conspiracy. Mr. Stumpf alleges the trial court conducted a charging conference in chambers on February 16, 2007, at which Mr. Stumpf objected to the trial court charging the jury on conspiracy. *See* Mr. Stumpf's Brief at 12; Trial Court Opinion filed 4/24/07 at 12. However, Mr. Stumpf apparently did not ensure this conference was recorded, and therefore, we have not been provided with a transcript of such. It is well-settled that this Court may only consider items which have been included in the certified record and those items which do not appear of record do not exist for appellate purposes. *Growall v. Maietta,* 931 A.2d 667 (Pa.Super.2007) (holding that failure by the appellant to ensure the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issues sought to be examined); *Keystone Technology Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223 (Pa.Super.2003) (holding an appellate court is limited to considering only those facts duly certified in the record on appeal and, for purposes of appellate review, what is not of record does not exist). That is, since Mr. Stumpf did not provide this Court with a transcription of the charging conference, or a statement in absence of a transcript pursuant to Pa. R.A.P. 1923, this Court has no objection to review.[9] Therefore, we find Mr. Stumpf's final issue to be waived.

¶ 25 Affirmed.

---

9. We note that, while the record contains an order directing the transcription of the trial testimony, opening statements, and closing statements, there is no indication the February 16, 2007 in-chambers conference was recorded or directed to be transcribed.