J-A17016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TRISHA F. KNIGHT AND THOMAS L. KNIGHT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 68 WDA 2025 |
| BURTON G. NESLER, D.C., | : | |
| SHENANGO VALLEY CHIROPRACTIC, | : | |
| P.C. AND MORRIS CHIROPRACTIC | : | |

Appeal from the Judgment Entered March 3, 2025
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2021-00565

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: August 27, 2025**

Trisha F. Knight ("Trisha") and Thomas L. Knight, husband and wife (collectively "the Knights"), appeal from the judgment entered in favor of Burton G. Nesler, D.C. ("Dr. Nesler"), and his employers, Shenango Valley Chiropractic, P.C., and Morris Chiropractic (collectively "Appellees").  We affirm.

In May 2019, Trisha began treating with Shenango Valley Chiropractic for stiffness and pain in her left knee, neck, and lower back.  Between May and July 2019, Trisha attended ten chiropractic appointments at Shenango Valley Chiropractic, and Dr. Nesler conducted eight of those appointments.  At each of these appointments, Trisha's chief complaint was neck pain.  On September 30, 2019, Trisha returned to Shenango Valley Chiropractic for a

chiropractic adjustment and was again treated by Dr. Nesler, who performed an adjustment to Trisha's lumbar region and another adjustment to her back below the bottom of her scapula while she was positioned on her right side. Dr. Nesler made no adjustment to Trisha's neck area.

The following day, Trisha, who worked as a teacher at a school, visited the school nurse. Three weeks later, on October 21, 2019, Trisha treated with another chiropractor, Anthony Jones, D.C. ("Dr. Jones"), with whom she had previously treated for neck and lower back pain in 2012. Dr. Jones' treatment records for this visit indicate that Trisha complained of left trapezius pain, neck pain, lower back pain, and upper thoracic pain following an appointment with another, unidentified chiropractor on October 14, 2019. Dr. Jones did not make any determination regarding the cause of Trisha's pain; however, he noted that her current complaints of pain were similar to her previous complaints of pain in his prior treatment. Trisha continued to treat with Dr. Jones until November 7, 2019.

On November 11, 2019, Trisha presented to her primary care physician, Randall Stigliano, M.D. ("Dr. Stigliano"). During this visit, Trisha revealed that, on or about October 15, 2019, she was struck on her head by her horse, and that she had experienced neck pain since October 1, 2019, following a head and back adjustment. Dr. Stigliano did not make any determination as to the cause of Trisha's various complaints of pain.

In January 2020, Trisha began treating with an orthopedic surgeon, James Boniface, M.D. ("Dr. Boniface"), who ordered an MRI of Trisha's cervical and thoracic spine which revealed multi-level disc protrusion in the cervical region consistent with a degenerative condition. The MRI did not reveal trauma or injury to the thoracic region. Dr. Boniface referred Trisha to an orthopedic spine surgeon, William Donaldson, M.D. ("Dr. Donaldson").

Trisha presented to Dr. Donaldson in February 2020. He reviewed the MRI results and confirmed Dr. Boniface's findings that there were underlying degenerative changes throughout Trisha's cervical spine inconsistent with trauma. Dr. Donaldson made no determination as to the cause of Trisha's pain.

In March 2021, the Knights filed a complaint against Appellees asserting claims for professional negligence, battery, and loss of consortium. Therein, the Knights averred that Trisha sustained injuries as a result of Dr. Nesler's actions during the September 30, 2019 appointment, when he used an improper chiropractic technique applying excessive force and causing Trisha to feel immediate neck pain. The Knights claimed that, as a result of Dr. Nesler's improper chiropractic treatment, Trisha suffered persistent neck and back pain, headaches, light sensitivity, nausea, numbness and tingling, and herniated discs in her spine. The Knights then filed an amended complaint asserting the same claims.

Thereafter, the Knights disclosed that they would not be submitting an expert report from any medical professional and would instead rely on testimony from Trisha's treating physicians, whose testimony would be limited to their treatment records. The Knights later requested that the claim for professional negligence be stricken, and the trial court granted their request.

Prior to trial, the parties filed motions *in limine*. The Knights sought a ruling *in limine* that the records of Trisha's medical providers, which were stipulated as authentic, were admissible as business records pursuant to Pa.R.E. 803(6). The Knights also sought a ruling *in limine* that Trisha's statements to her physicians, as contained in their treatment records, were admissible as an exception to the rule against hearsay because they were statements made for medical diagnosis or treatment pursuant to Pa.R.E. 803(4). The trial court granted the motion, but specified that causation of any physical injuries or damages reflected in those records would be for the jury to decide. The Knights also sought a ruling *in limine* to exclude evidence regarding negligence concepts, such as chiropractic standards of care, as well as the testimony of Appellee's expert chiropractic witness, Gary Weinstein, D.C. ("Dr. Weinstein"). The trial court denied this motion. Finally, the trial court granted Appellees' motion *in limine* to preclude the Knights from presenting any testimony or argument at trial that the treatment records from the September 30, 2019 appointment had been fraudulently altered or falsified.

- 4 -

The case proceeded to a jury trial in December 2024, solely on the claims for battery and loss of consortium. The trial court ruled that the Knights were required to lay a proper foundation through credible expert medical causation testimony before they would be permitted to present various items of evidence to the jury, including the records of Trisha's treating physicians. The trial court reasoned that, because the cause of Trisha's claimed physical injuries was not obvious, the Knights were required to present expert medical testimony establishing that Trisha's claimed physical injuries[1] and the Knights' claimed damages (*i.e.*, medical bills) were directly caused by Dr. Nesler's actions at the September 30, 2019 appointment. The Knights presented the testimony of Dr. Jones, Dr. Boniface, and Dr. Donaldson. None of these physicians provided an opinion as to whether Dr. Nesler's actions caused Trisha's alleged physical injuries. During Appellees' cross-examination of Trisha, the trial court permitted defense counsel to use a portion of a notation in Dr. Stigliano's treatment records — related to Trisha's statement regarding the October 15, 2019 incident with her horse — to cross-examine her, but denied the Knights' request to admit into evidence the remainder of her statement.

---

[1] The trial court did not require the Knights to present expert testimony regarding Trisha's claimed emotional damages, such as mental distress, embarrassment, humiliation, loss of enjoyment of life, *etc*.

When the Knights concluded the presentation of their case, Appellees moved for a partial directed verdict as to any claim for physical injuries allegedly caused by Dr. Nesler's treatment. The trial court granted the motion and entered a partial directed verdict for Appellees. Appellees then presented their case, which consisted of expert testimony provided by Dr. Weinstein, a chiropractor, who testified to a reasonable degree of professional certainty that the care and treatment provided to Trisha by Dr. Nesler was performed in accordance with applicable chiropractic standards of care.

As the Knights were unable to present any expert causation testimony linking her claimed injuries and damages to the September 30, 2019 appointment with Dr. Nesler, the trial court instructed the jury that it was prohibited from considering physical injuries or damages in its deliberations. At the conclusion of trial, the jury returned a verdict in favor of Appellees, unanimously concluding that Dr. Nesler did not commit a battery against Trisha. The jury never reached the issue of causation. The Knights filed a post-trial motion which the trial court denied on December 27, 2024. The Knights filed a timely notice of appeal and both they and the trial court complied with Pa.R.A.P. 1925.

The Knights raise the following issues for our review:

1. Were [Trisha's] post-incident medical records relevant and admissible where the records were stipulated as authentic and the trial court ruled on motions *in limine* that the medical records and statements contained therein were admissible under exceptions to the rule against hearsay?

2. Should Appellees have been prevented from presenting evidence and argument regarding negligence concepts in a case where the sole liability claim pursued at trial was for intentional battery?

3. Should the Knights have been permitted to introduce the remainder of a hearsay statement contained in medical records made by Dr. . . . Stigliano, when the portion of the hearsay statement introduced by the Appellees standing alone misled and confused the jury?

4. Should the Knights have been permitted to argue that treatment records from September 30, 2019, were altered by the Appellees when evidence of such alteration was presented at trial?

5. Is evidence of [Trisha's] injury, including medical records and testimony from multiple fact and expert witnesses, including two treating physicians and a chiropractor, sufficient to submit the issue of causation of [Trisha's] injuries to a jury?

Knight's Brief at 4-5 (issues reordered for ease of disposition).

The Knights' first four issues challenge the trial court's evidentiary rulings. Our standard of review of a trial court's decision to admit or exclude evidence is well-settled:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Stumpf v. Nye*, 950 A.2d 1032, 1035-36 (Pa. Super. 2008).

- 7 -

Rule 401 of the Pennsylvania Rules of Evidence provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In their first issue, the Knights challenge the trial court's ruling to exclude the records of Trisha's treating physicians unless the Knights could establish causation though expert medical testimony. The law of this Commonwealth is well-settled as to when expert medical testimony will be required to establish a causal connection between an event and the result sought to be proven. *See Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 750 (Pa. 2002). "Where there is no obvious causal relationship, unequivocal medical testimony is necessary to establish the causal connection." *Id*. This is because the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion. *See Grossman v. Barke*, 868 A.2d 561, 567 (Pa. Super. 2005). Without an expert, the jury could have no basis other than conjecture, surmise, or speculation upon which to consider causation. *See id*.; *see also Brannan v*.

*Lankenau Hosp.*, 417 A.2d 196, 200 (Pa. 1980) (indicating that the requirement of expert testimony in such cases stems from judicial concern that, absent the guidance of an expert, jurors are unable to determine relationships among scientific factual circumstances).

On the other hand, expert testimony is not necessary where the cause of an injury is clear and where the subject matter is within the experience and comprehension of lay jurors. *See Montgomery*, 798 A.2d at 752; *see also id*. at 751 (explaining that an expert opinion is not necessary where the event and claimed injury are "so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection" (citation omitted)).

The Knights argue that they obtained rulings *in limine* from the trial court that the treatment records of Trisha's medical providers were admissible as business records pursuant to Rule 803(6), and that her statements to her physicians in those records were admissible pursuant to Rule 803(4). The Knights claim that, despite these rulings, and the stipulation that the treatment records were authentic, the trial court limited the use of the records at trial and prevented the Knights from using the hearsay statements contained therein. The Knights point out that, after Appellees objected to the admission of the treatment records because there was no expert evidence of causation, the trial court sustained the objection and ruled that the records were inadmissible unless the Knights were able to establish causation. The

Knights generally claim, without directing this Court to any particular entry nor any specific medical record, that evidence regarding the causation of Trisha's injuries is contained within the medical records and hearsay statements that the trial court prevented from coming into evidence. Instead, the Knights vaguely assert that the records showed Trisha's post-injury course of medical treatment as well as the contemporaneous statements she made to those medical providers, which were both material and relevant to the cause and extent of her injuries and were highly probative. The Knights claim that the trial court's refusal to permit them to utilize the medical records and the statements Trisha made to her medical providers was extremely prejudicial and prevented the jury from hearing critical evidence regarding her injuries.

The trial court considered the Knights' first issue and determined that it lacked merit. The court reasoned:

> [The Knights claim] that this court erred as a matter of law in granting [Appellees'] objection to [the Knights'] use of medical records and charges for medical treatment at trial without additional evidence of factual cause, despite the pretrial stipulation of counsel that the medical records were authentic and a pre-trial ruling in response to [the Knights'] motion *in limine* that the treatment records were admissible under the business records exception to the rule against hearsay.
>
> This court noted the stipulation of counsel that the subject medical records/bills were authentic on the record and also made the distinction between authenticity and admissibility. This court specifically stated: "Now, we stipulated that they were authentic. We didn't stipulate that they're admissible." [N.T.,] 12/9/24[, at] 69. This court did indicate in its opinion and order dated December 4, 2024[,] that it was granting a motion *in limine* filed

- 10 -

by [the Knights] seeking a ruling that . . . Trisha['s] medical records subsequent to her alleged injuries would be admissible at trial as business records pursuant to Pa.R.E. 803(6) . . .. However, the court's opinion observed at footnote 1 that:

> There was discussion in chambers between the parties and the court concerning what sorts of damages [the Knights are] seeking and what [they] must prove as to causation of damages. There was agreement that, at [a] minimum, damages in the amount of [the Knights] medical bills will require a showing of causation.

[Trial Court Opinion, 12/4/24, at 2 n.1.]

[Trisha's] testimony at trial . . . described Dr. Nesler doing "something" on her back between her shoulder blades when she felt a thrust and heard a pop, after which she felt pain and fear. [N.T.,] 12/9/24[, at] 16. This court still believes that the subject medical records were of regularly conducted activities but sustained Appellees' objection at trial to the admission of said records because of a lack of evidence that injuries and/or treatment in said records were causally related to Dr. Nesler's actions. This lack of evidence of a connection between the subject medical records and Dr. Nesler's actions meant such records were not sufficiently relevant to be admitted. Also, Pa.R.E. 403 . . . provides for the exclusion of evidence even if it is relevant when its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, *etc*. This court did not categorically rule out the possibility of admitting any of the subject medical records but rather required [the Knights] to make a showing of the above-described causal connection. This court stated:

> I will sustain the objection subject to the fact that (it's) pending the other (anticipated) testimony of the doctors. If there is a link or we get into a factual cause, [the Knights] can bring (in) the medical (records). So[,] I'm not precluding it forever depending on what the testimony is. But[,] on the limited basis we have now, objection sustained.

Trial Court Opinion, 2/27/25, at unnumbered 5-7 (unnecessary capitalization and quotation marks omitted).

Based on our review, we discern no abuse of discretion by the trial court in issuing its ruling that the treatment records were inadmissible unless the Knights could establish a causal connection between Dr. Nesler's actions and Trisha's claimed physical injuries. Importantly, the cause of Trisha's claimed physical injuries was not obvious. There was evidence that she had treated with Dr. Jones for pain in her neck and lower back in 2012, seven years before she initially presented to Shenango Valley Chiropractic in May 2019 with similar complaints of stiffness and pain in her neck and lower back. Further, Trisha's first appointment at Shenango Valley Chiropractic, when she initially presented with complaints of neck and back pain, was four months before the September 30, 2019 appointment with Dr. Nesler. Moreover, at her October 21, 2019 appointment with Dr. Jones, Trisha complained of left trapezius pain, neck pain, lower back pain, and upper thoracic pain following an appointment with another, unidentified chiropractor on October 14, 2019. Additionally, in November 2019, Trisha advised Dr. Stigliano that, on October 15, 2019, she was struck on her head by her horse. Finally, the MRI test revealed that Trisha had multi-level disc protrusion in the cervical region consistent with a degenerative condition which was not associated with any type of trauma. Thus, there was evidence presented at trial which suggested that Trisha's neck and back pain pre-existed her appointment with Dr. Nesler and/or was caused

by events and/or degenerative conditions unrelated to her appointment with Dr. Nesler. Thus, as the cause of Trisha's injuries was not obvious, the Knights were required to present expert medical testimony as to the cause of her claimed injuries. *See Montgomery*, 798 A.2d at 750. As they failed to do so, we discern no abuse of discretion by the trial court in excluding the medical records as lacking in relevance.

As to the Knights' claim that the treatment records themselves provided expert opinion evidence establishing causation, we note that the Knights have not directed this Court to any particular entry in any of the medical records which constitutes an expert medical opinion as to causation. To the extent that the treatment records contain references to Trisha's comments to her doctors, such comments do not constitute an expert medical opinion as to causation. Trisha is not a medical expert, and the mere inclusion of her lay opinion comments in a treatment record prepared by a medical professional does not elevate her comments to the status of an expert medical opinion regarding the cause of her claimed injuries. Accordingly, the Knight's first issue merits no relief.

In their second issue, the Knights challenge the trial court's denial of their motion *in limine* regarding the admissibility of negligence concepts. A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. *See Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 667 (Pa. Super. 2007). It gives the trial judge the

opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. *See Commonwealth v. Reese*, 31 A.3d 708, 715 (Pa. Super. 2011) (*en banc*). A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. *See Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014). Thus, we will not overturn the trial court's exercise of discretion absent a finding that the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record. *See Stumpf*, 950 A.2d at 1035-36.

As traditionally stated, the elements of the tort of battery are "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." *Levenson v. Souser*, 557 A.2d 1081, 1088 (Pa. Super. 1989) (*quoting* Prosser & Keeton, *Law of Torts*, at 39 (5th ed. 1984)); *see also Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1178 (Pa. Super. 1989) (*citing* Restatement (Second) of Torts §§ 13, 18). Importantly, as with any tort, in order for the Knights to recover damages, they were required to show that the alleged battery caused the injuries of which they complain. *See Grabowski v. Quigley*, 684 A.2d 610, 615 (Pa. Super. 1996) (explaining that "it is axiomatic that in any tort action the plaintiff must prove that the injury for which recovery is sought was caused by the tortious act in question").

The Knights claim that the trial court abused its discretion by denying their motion *in limine* in which they sought a pretrial ruling that evidence or argument regarding negligence principles should be precluded for its tendency to confuse and mislead the jury. The Knights concede that this matter involves an intentional battery claim and not a claim for medical battery based on lack of informed consent.[2] Nonetheless, the Knights argue that, in cases which sound in battery, negligence principles generally do not apply, and negligence requirements have no bearing on the matter. According to the Knights, the inclusion of evidence and argument regarding negligence concepts and standards of care was extremely likely to confuse a jury as to the correct test to apply. The Knights maintain that this confusion caused the jury to decide its verdict using improper evidence and tests.

_____

[2] Our Supreme Court has made clear that "a claim of a consented-to, but negligently performed, medical treatment" is distinct from "a claim based upon a lack of informed consent." *Montgomery*, 798 A.2d at 748-49. Whereas the former claim sounds in medical negligence, the latter claim sounds in battery. In *Montgomery*, the defendant physician performed a surgical procedure that was neither discussed with the patient nor consented to by the patient. With respect to these types of cases, the High Court stated "[s]ince surgery performed without a patient's informed consent constitutes a technical battery, negligence principles generally do not apply." *Id*. at 749. The Court reasoned that, even if the surgical procedure was successful and performed according to the applicable standard of medical care, a battery nonetheless occurred such that the plaintiffs did not have to establish medical negligence. *See id*. Here, unlike in *Montgomery*, the Knights' battery claim is not founded on lack of informed consent. Thus, their reliance on *Montgomery* for the proposition that no evidence relevant to a negligence claim should have been permitted in this battery action is unavailing.

- 15 -

The trial court considered the Knights' second issue and determined that it lacked merit. The court reasoned:

> [The Knights] claim . . . that this court "erred as a matter of law in permitting [Appellees] to present evidence and argument, including expert testimony of Dr. Weinstein, regarding negligence concepts and chiropractic standard of care when intentional battery and related loss of consortium were the only claims being pursued by [the Knights].
>
> [The Knights] have argued that this case is one of medical battery only and that Appellees should not have been permitted to put on a defense that included evidence and argument attempting to show that . . . Trisha . . . received chiropractic care as opposed to a battery as she described it. [Trisha's] trial testimony included the following:
>
>> [A.] He (. . . Dr. Nessler) was very agitated, very agitated. I didn't know why. There's nothing I had done. I don't know why he was so upset.
>>
>> * * * *
>>
>> And right when I was on my face on the table and he was messing with my hip, I remember I said something to the effect like I can't spend money from my family if I'm not in any pain. I mean, I don't want to make family issues.
>>
>> And the last words he said before I quit talking were we all have family issues. And I can remember my chest closing off and thinking this isn't good. Like, he's really upset right now and I don't know why.
>>
>> And he asked me to move on my right side and take my arm and put it over my back like this and turn my head. And then he did something on my back between my shoulder blades. I felt the thrust. I heard the pop. And he said I know you don't like that.
>>
>> I just quit talking. I didn't say a thing at that point. I couldn't do anything. I was frozen.

- 16 -

[Q.] What did you feel?

[A.] Pain. Radiating pain. Not just the pain. It was just like so bad I couldn't breathe. Just fear.

[N.T.,] 12/[]24[, at] 15, Ins. 21-23 and p. 16, Ins. 8-25.

In contrast to this account of an angry doctor battering his patient, the defense theory of the case was that what happened was standard chiropractic care. Dr. Weinstein's testimony included the following:

[Q.] Based upon your review of the records, of the depositions taken, and all of the other attendant information from other providers, do you believe that what Dr. Nester did on September 30 of 2019, from the Change of Condition Report, examination, treatment, and care was within acceptable chiropractic standards?

[A.] It was.

[Q.] And in accordance with chiropractic standards?

[A.] It was.

[Q.] Did you see any real evidence that anything he did in that room in placing his hand on the patient was outside the bounds of chiropractic care?

[A.] I did not.

[N.T.,] 12/11/24[, at] 33, Ins. 24-25 and p. 34, Ins. 1-11. This court did not wish to impose limitations on Appellees that would deprive them of the opportunity to present a full and fair defense by accepting [the Knights'] framing of the facts.

Trial Court Opinion, 2/27/25, at unnumbered 7-8 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in denying the Knights' motion *in limine* regarding evidence and arguments

- 17 -

related to negligence concepts. Although the Knights elected to proceed against Appellees solely on their intentional battery claim, rather than on their professional negligence claim, the fact remains that the claimed injury occurred during the course of a chiropractic appointment being conducted by a licensed chiropractor upon an established patient which took place in the office of a chiropractic practice group. Accordingly, Appellees' primary defense was that Dr. Nesler's actions during the September 30, 2019 chiropractic appointment consisted of routine chiropractic maneuvers such that no battery occurred. On the record before us, we cannot say that the trial court's exercise of discretion, in denying the Knights' motion *in limine* to preclude Appellees from advancing this defense, was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. ***See Stumpf***, 950 A.2d at 1035-36. Accordingly, their second issue merits no relief.

In their third issue, the Knights challenge the trial court's decision to permit Appellees to use a portion of a statement that Trisha made to Dr. Stigliano, as reflected in his treatment note from November 11, 2019, during Trisha's cross-examination, while precluding the Knights from presenting the jury with another portion of the statement. A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness' credibility. ***See*** Pa.R.E. 613(a). Additionally, "[t]he credibility of a witness may be impeached by any evidence relevant to that issue, except as otherwise provided by statute or these rules." Pa.R.E. 607(b). However, the

comment to Rule 607 highlights that there are limits on the admissibility of evidence relevant to the credibility of a witness, such as Rule 403, which excludes relevant evidence if its probative value is outweighed by the danger of unfair prejudice. ***See id***., Comment; ***see also*** Pa.R.E. 403 (providing that the court may exclude relevant evidence if its probative value is outweighed by, *inter alia*, the danger of unfair prejudice, confusing the issues, or misleading the jury).

Pennsylvania Rule of Evidence 106 is commonly referred to as the "rule of completeness," and its Comment provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Pa.R.E. 106. The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context. ***See Commonwealth v. Raboin***, 258 A.3d 412, 422 (Pa. 2021) (***quoting*** Pa.R.E. 106, Comment). The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part. ***See id***. The adverse party carries the burden of demonstrating that the remaining portion of the writing or recording is relevant. ***See id***.

The Knights contend that when the trial court permitted Appellees to use an excerpt from Dr. Stigliano's treatment record, their counsel objected and requested that the entire statement be read. Specifically, the court permitted the Appellees to introduce the portion of the record which stated "The PT went to feed her horse and bent down and the horse had bent down over her[,] and she felt the horses [*sic*] teeth on top of her head and she was coming up. Started October 15th." Knights' Brief at 32 (*quoting* Appellees' Exhibit 3). The Knights contend that the trial court prevented them from introducing another portion of the treatment note which stated, "47 year old female presents today for dizziness, migraines and nausea. Started October 1st. The PT had head back [*sic*] adjusted and since then has had pain in her neck." ***Id***. The Knights assert that Appellees' use of the isolated portion of the treatment note is the type of situation that Rule 106 was designed to address. According to the Knights, as a result of hearing only the partial statement contained in Dr. Stigliano's notes, the jury was misled to believe that Trisha presented to Dr. Stigliano because she was injured by a horse on October 15, 2019, rather than for symptoms starting immediately after the incident in question.

The trial court considered the Knights' third issue and determined that it lacked merit. The court reasoned:

> A critical issue at trial was whether . . . Trisha['s] injuries or conditions were[,] in fact[,] caused by Dr. Nesler as she claimed or resulted from some other cause or causes, such as an accident with a horse. [Trisha] was involved in competitive horse training

- 20 -

and riding. The incident and/or appointment with Dr. Nesler during which [Trisha] claimed she was injured occurred on September 30, 2019. After said appointment, [Trisha] testified she saw the school nurse at the school where she teaches, another chiropractor named Dr. . . . Jones, and then a family doctor named Dr. . . . Stigliano. [The Knights'] counsel questioned [Trisha] on direct examination concerning why Dr. Stigliano would have included in his treatment notes from [Trisha's] appointment with him on November 11, 2019[,] that she had been hit in the head by a horse. [N.T.,] 12/9/24[, at] 30-32. [Trisha] attempted to explain that about 12 years prior she had such an accident with a horse and she mentioned it to Dr. Stigliano. However, [Trisha] testified that she did not have such an accident subsequent to the incident and/or appointment with Dr. Nesler, and [she] testified that she did not have such an accident with a horse on the specific date of October 15, 2019. Appellees' counsel sought to cross[-]examine [Trisha] concerning whether she had an accident involving a horse on October 15, 2019. The court allowed cross[-]examination using part of Dr. Stigliano's above-mentioned treatment note on the grounds that it was permissible impeachment. **See** [**id**. at] 66-71. The following questions and answers are most relevant:

> [Q.] So, if Dr. Stigliano's record indicates that you went to feed your horse, you bent down and the horse bent down over her, and she felt the horse's teeth on the top of her head as she was coming up; and says started on October 15th, you would disagree with that?
>
> [A.] I wasn't caring for a horse then. My horse was boarded in Brookfield, Ohio, and I paid a monthly board for someone else to feed my horse.
>
> * * * *
>
> [Q.] So[,] you're the source of that statement. You just disagree with the statement, right?
>
> [A.] Yes.

[N.T.,] 12/9/24[, at] 70, Ins. 10-17 and p. 71, Ins, 3-S. This was proper impeachment under Pa.R.E. 607. . . and Pa.R.E. 613(a) . . . .

- 21 -

There was some discussion between this court and counsel concerning whether the use of the subject part of Dr. Stigliano's treatment note made it so that [the Knights] could admit other parts of said treatment note or the entire treatment note. ***See*** [N.T.,] 12/9/24[, at] 68-69. This court ultimately concluded the entire note could not be admitted on the grounds that part of said note was used for impeachment. This was based on a proffer by [the Knights'] counsel, Pa.R.E. 613 and case law interpret treatment note that he maintained provided necessary context. Counsel read as follows:

> It says 47-year-old female presents today for dizziness, migraines and nausea. Started October 1st. Patient had head/back adjustments and since then has had pain in her neck.
>
> . . . The treatment note itself was not the witness's statement. It was Dr. Stigliano's note, which would have been based in relevant part on statements [Trisha] made to the doctor and/or his staff. It was not signed or adopted by [Trisha]. That part of the note which the jury heard read was refuted by [Trisha].
>
> An important consideration in the court's conclusion that the entire treatment note could not be admitted is the court's desire to avoid the impression that Dr. Stigliano and/or his treatment note had expert opinions about causation which the jury could consider. With regard to tort. claims of physical injury or impairment, expert medical testimony is necessary to establish a causal nexus between the injury and the tortious conduct in those cases where the connection is not obvious. . . .

Trial Court Opinion, 2/27/25, at unnumbered 9-13 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in permitting Appellees to use the portion of Dr. Stigliano's treatment note regarding Trisha's statements regarding the incident with the horse to cross-examine her regarding the cause of her injuries. Pursuant to Rules 607 and 613, the trial court had the discretion to permit Appellees to attempt to

impeach Trisha's credibility with evidence relevant to the issue of the cause of her injuries. Because Trisha claimed that the sole cause of her neck and back pain was the treatment provided by Dr. Nesler, the trial court properly exercised its discretion in permitting Appellees to cross-examine Trisha regarding her statement to Dr. Stigliano that she was struck on the head by her horse on October 15, 2019, shortly after her September 30, 2019 appointment with Dr. Nesler, and to question her as to whether the horse incident may have been an alternate source of her claimed injuries.

We further discern no abuse of discretion by the trial court in precluding the Knights from presenting to the jury other portions from the same treatment note which consisted of Trisha's statements to Dr. Stigliano that she had been experiencing neck pain since October 1, 2019, after a head and neck adjustment. As explained above, the Knights were required to present expert medical testimony establishing the cause of Trisha's alleged physical injuries. As they failed to do so, any lay opinion testimony on the issue of causation would have the potential to cause unfair prejudice, confusion of the issues, and mislead the jury. Thus, despite the rule of completeness provided by Rule 106, we discern no abuse of discretion by the trial court in declining to permit the admission of the other portion of Trisha's statement in Dr. Stigliano's treatment notes. For this reason, the Knight's third issue merits no relief.

In their fourth issue, the Knights challenge the trial court's grant of Appellees' motion *in limine* which prevented them from claiming or arguing that Appellees' treatment records from the September 30, 2019 appointment had been fraudulently altered or falsified. As explained above, a trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review. *See Parr*, 109 A.3d at 690. Thus, we will not overturn the trial court's exercise of discretion absent a finding that the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record. *See Stumpf*, 950 A.2d at 1035-36.

The Knights claim that a document entitled "Change of Condition Report" was partially filled out by Trisha prior to her appointment with Dr. Nesler on September 30, 2019, wherein she indicated that she felt no pain. However, the Knights claim that the document has circles made with a different colored pen which indicate complaints of pain. According to the Knights, Trisha testified that she did not make those marks, and that she did not have any pain or symptoms prior to her appointment that day. The Knights additionally point to Dr. Nesler's testimony that his office sometimes edits his patient's documents. The Knights contend that, this document, as completed by someone else, showed various complaints of pain. The Knights assert that the trial court should have permitted them to argue that Appellees

intentionally altered the medical records from the September 30, 2019 appointment to cover up the incident.

The trial court considered the Knights' fourth issue and determined that it lacked merit. The court reasoned:

> [The Knights' fourth] claim of error is that this court "erred as a matter of law in granting [Appellees'] motion *in limine*, prohibiting [the Knights] from arguing that [Appellees'] treatment records from September 30, 2019, were altered or falsified when there was evidence of inconsistencies in those records; evidence of notations in the records to make it appear as if [Trisha] presented at her appointment on that date with pain complaints when she reported no pain complaints in the portions of the records actually completed by her; and evidence of questionable record keeping practices by [Appellees]."
>
> In its Order granting said motion *in limine* dated December 4, 2024 this court prohibited [the Knights] from suggesting "intentional falsification (of records) unless and until definitive evidence of the same is presented." This court expressly permitted [the Knights] to present evidence that the records were not correct. It was the intention of this court to prevent unsubstantiated accusations of fraud that could unfairly prejudice the jury or mislead jurors by suggesting there was actual evidence of fraud beyond claimed inconsistencies or inaccuracies in records.

Trial Court Opinion, 2/27/25, at 8-9 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in granting Appellees' motion *in limine* regarding claims or argument that the records from the September 30, 2019 appointment had been fraudulently altered or falsified absent evidence of such alteration or falsification. As the Knights concede, they were permitted to present Trisha's testimony that she did not make the circular marks indicating complaints of pain, and that she did not have any pain or symptoms prior to her appointment that day. In our

view, that a doctor or his staff may add information to a document initially filled out by a patient, including findings made by the doctor or additional information provided by the patient during the course of an appointment, is not, without more, evidence of fraud. Thus, we cannot say that the trial court's exercise of discretion, in precluding the Knights from making any such claim of fraud or falsification without additional corroborating evidence, was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. **See Stumpf**, 950 A.2d at 1035-36. Accordingly, the Knights' fourth issue merits no relief.

In their final issue, the Knights claim that the trial court erred by entering a partial directed verdict for Appellees on the issue of causation of Trisha's physical injuries and resulting medical bills. We will reverse a trial court's decision to grant a directed verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. **See Campisi v. Acme Markets, Inc.**, 915 A.2d 117, 119 (Pa. Super. 2006).

The trial court should grant a directed verdict to a moving party when: (1) the movant is entitled to judgment as a matter of law; or (2) the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. **See Moure v. Raeuchle**, 604 A.2d 1003, 1007 (Pa. 1992). With regard to the first scenario, a court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in the movant's

favor. *See id*. With regard to the second scenario, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *See id*. Only in a case where the facts are all clear, and there is no room for doubt, should the case be removed from the jury's consideration, and a motion for directed verdict be granted. *See Correll v. Werner*, 437 A.2d 1004, 1005 (Pa. Super. 1981).

When ruling on a motion for a directed verdict, the trial court must accept as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made and must reject all testimony and inferences to the contrary. *See id*. Likewise, when this Court reviews a trial court's decision to direct a verdict in favor of a defendant, we must view the evidence presented in the light most favorable to plaintiff and determine whether plaintiff failed to prove his case as a matter of law. *See Edwards v. Brandywine Hospital*, 652 A.2d 1382, 1384 (Pa. Super. 1995).

The Knights concede that they bore the burden of proving that Trisha's alleged injuries were caused by an alleged battery. Nonetheless, they assert that expert testimony is not required to meet this burden when the cause of an injury is clear, and the subject matter is within the experience and comprehension of the jurors. The Knights additionally argue that an expert report is not required when an expert forms an opinion about causation during treatment. The Knights insist that they presented expert evidence regarding

the causation of Trisha's injuries sufficient to create question for the jury. In advancing this argument, the Knights point to the generalized testimony of Dr. Jones, Dr. Boniface, and Dr. Donaldson that they provided treatment to Trisha at some point after September 30, 2019. The Knights further assert that they presented Trisha's lay testimony regarding the cause of her injuries, including her testimony that she did not have pain before the incident on September 30, 2019. Based on such testimony, the Knights argue that it was not plain or clear that Appellees were entitled to a partial directed verdict on the issue of causation.

The trial court considered the Knights' final issue and determined that it lacked merit. The court noted that case law has established a "dividing line" to be used to determine when expert testimony is required before compensatory damages may be awarded for alleged physical injuries. **See** Trial Court Opinion, 2/27/25, at 4. The court explained that expert testimony is required when the causal connection between an event and an injury is not obvious, direct, and proximate. **See id**. The court reasoned "that it followed the . . . 'dividing line' when it granted a partial directed verdict as to the issue of . . . Trisha's . . . alleged physical injuries, the same being the sort of damages that require expert testimony showing causation." **Id**. at 4-5.

Based on our review, we discern no abuse of discretion or error of law by the trial court in entering partial directed verdict for Appellees. Even when viewing the record in the light most favorable to the Knights, the cause of

Trisha's claimed injuries was not obvious, given that there was evidence that she had issues with back and neck pain dating as far back as 2012, she told Dr. Jones that she had been experiencing neck and back pain since treating with an unidentified chiropractor on October 14, 2019, and she told Dr. Stigliano that she had an incident with her horse on October 15, 2019. Moreover, Trisha's MRI results indicated that she had multi-level disc protrusions in her cervical spine consistent with degenerative conditions which were not indicative of any traumatic event. Thus, as the cause or causes of Trisha's injuries were neither clear nor obvious, the Knights were required to present expert testimony establishing a direct causal link between Dr. Nesler's treatment and Trisha's claimed physical injuries. However, the Knights presented no such evidence or testimony. Indeed, none of Trisha's treating physicians formed any expert opinion, rendered to a degree of medical certainty, as to the cause of her claimed physical injuries. Accordingly, on the record before us, Appellees were entitled to a partial directed verdict as to the issue of causation of Trisha's claimed physical injuries and resulting medical bills.

Given that the Knights are not entitled to relief on any of their claims, we affirm the judgment entered for Appellees.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/27/2025